Office Copy
08 CV 6294
JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LASALLE BANK NATIONAL ASSOCIATION, as Indenture Trustee, | |
| Interpleader Plaintiff, | **INTERPLEADER COMPLAINT** |
| - against - | |
| CITIGROUP GLOBAL MARKETS LIMITED; COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK, B.A., NEW YORK BRANCH; NIBC CREDIT MANAGEMENT, INC.; CEDE & CO., as holder of certain Notes and nominee name of the Depositary Trust Company; and DOES 1 through 100, owners of beneficial interests in the Notes, | Case No.  |
| Interpleader Defendants. | |

---

Interpleader Plaintiff LaSalle Bank National Association ("LaSalle"), in its capacity as Trustee under the Indenture, dated as of March 8, 2007, by and among itself, Plettenberg Bay CDO Limited, as Issuer and Plettenberg Bay CDO Corp., as Co-Issuer (as amended, the "Indenture"), alleges and states that:

### INTRODUCTION

1. This is an interpleader action for the purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with respect to certain assets held by LaSalle. LaSalle, which serves as Trustee under the Indenture (all capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Indenture), faces competing demands by the Interpleader Defendants with respect to actions to be taken with respect to certain Classes of Notes and the Collateral following an Event of Default under the Indenture, and cannot determine, without hazard to itself, how to proceed.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1335 because this is a civil action of interpleader or in the nature of interpleader, two or more adverse claimants are of diverse citizenship, the amount in controversy exceeds $500 and LaSalle is posting a bond in the amount of $560,670.38.

3.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1397 because one or more defendants reside within this judicial district.

## PARTIES

4.     Interpleader Plaintiff LaSalle is a national banking association with its main office in Chicago, Illinois. LaSalle is the Trustee under the Indenture.

5.     Interpleader Defendant NIBC Credit Management, Inc. ("NIBC"), upon information and belief, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 527 Madison Avenue, 8th Floor, New York, New York 10022. Upon information and belief, NIBC is the Collateral Manager for a CDO, ONCA 2007-1, Ltd., which holds certain Class A-1 and A-2 Notes.

6.     Upon information and belief, Interpleader Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., New York Branch, which is also known as Rabobank International or Rabobank International, New York Branch (herein, "Rabobank International, New York Branch") is a branch of Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. Upon information and belief, Rabobank International, New York Branch has its principal place of business at 245 Park Avenue, New York, New York 10167. Upon information and belief, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. is a limited liability cooperative organized and existing under the laws of the Netherlands, having its principal place of business at UCR-200, CRS Telecoms, Croeselaan 18, 3521CB Utrecht, Netherlands. Upon information

and belief, Rabobank International, New York Branch is a beneficial owner of certain Class A-2 Notes.

7. Interpleader Defendant Citigroup Global Markets Limited ("Citigroup") is, upon information and belief, a private limited company, organized and existing under the laws of the United Kingdom, with its principal place of business at Citigroup Centre, 25 Canada Square, London E14 5LB, United Kingdom. Citigroup is the Class S Swap Counterparty under the Indenture and consequently has an interest in the manner in which principal and interest proceeds are distributed under the Indenture.

8. Interpleader Defendant Cede & Co. is, upon information and belief, the nominee name of The Depositary Trust Company, a limited purpose trust company organized under New York banking law, with its principal place of business at 55 Water Street, New York, New York 10041-0099. Cede & Co. is the registered holder of record of the Notes, representing 100% of the aggregate principal amount outstanding on the Notes. Upon information and belief, Cede & Co. holds the Notes for the ultimate benefit of others.

9. Interpleader Defendants Does 1 through 100 (the "Doe Defendants") are, upon information and belief, beneficial owners of the interests in the Notes held by Cede & Co. LaSalle does not know the names or true identities of the Doe Defendants.

## BACKGROUND

10. LaSalle is a party to the Indenture, pursuant to which the Issuer and, in certain circumstances, the Co-Issuer issued certain Notes, which Notes are secured by a pool of Collateral. LaSalle is required to treat the Indenture as confidential pursuant to Section 14.15 of the Indenture.

11. The Collateral consists of asset-backed securities, synthetic securities and other assets and accounts, and includes all payments and proceeds received on the asset-backed

securities, synthetic securities and the other assets. Pursuant to the Indenture, the Issuer pledged the Collateral to LaSalle, in its capacity as Trustee, in order to secure its obligations under the Indenture. LaSalle holds the Collateral on behalf of the Secured Parties under the Indenture and collects the proceeds payable on such Collateral.

12. Payments on the Notes (and certain other amounts payable by the Issuer) are made on certain specified dates (each, a "Payment Date") from proceeds collected by LaSalle in respect of the Collateral. Unless an Event of Default has occurred and is continuing under the Indenture, such payments are made in accordance with the priorities set forth in Section 11.1(a) of the Indenture.

## THE DISPUTE

13. On or about March 4, 2008, LaSalle became aware of the occurrence of an Event of Default pursuant to Section 5.1(h) of the Indenture ("Event of Default").

14. On March 6, 2008, LaSalle issued a Notice of the Event of Default pursuant to Sections 5.1 and 6.2 of the Indenture to the Parties Identified on Attached Schedule I, as designated in Section 6.2 of the Indenture ("Schedule I Parties").

15. Following the occurrence of an Event of Default, payments of the proceeds of the Collateral are no longer made in accordance with the priorities set forth in Section 11.1(a) of the Indenture. Instead, both Section 11.1(b) and Section 13.1 of the Indenture address the manner in which payments should be made following the occurrence of an Event of Default.

16. Section 11.1(b) requires that, following an Event of Default, interest payments be made on Class A-2 Notes prior to making payments in respect of principal to the Class A-1 Notes; Section 13.1(d), in contrast, requires that, following an Event of Default, the Class A-1 Notes be paid in full prior to making any payments in respect of the Class A-2 Notes. Because both provisions specifically address the manner in which payments should be made following the

- 4 -

occurrence of an Event of Default, LaSalle is unable to determine in what manner payments in respect of principal on the Class A-1 Notes and interest on the Class A-2 Notes should be made.

17. The first Payment Date following the occurrence of an Event of Default occurred on March 10, 2008. On such date, LaSalle issued a Notice regarding payments following an Event of Default to the Schedule I Parties ("March 10 Notice").

18. The March 10 Notice stated that prior to the occurrence of an Event of Default on March 4, 2008, monthly and quarterly distributions were made in accordance with Section 11.1(a) of the Indenture. It further stated that Section 11.1(b) and Section 13.1 set forth conflicting distribution requirements following an Event of Default. The March 10 Notice informed the Schedule I Parties that on that date, LaSalle distributed amounts pursuant to Section 11.1(b) of the Indenture, except that amounts which would have otherwise been payable to the Class A-2 Notes in respect of interest pursuant to clause (iv) of Section 11.1(b) of the Indenture would be held in escrow pending a determination of the proper application of the Indenture provisions referenced in the March 10 Notice. Finally, the March 10 Notice invited the Schedule I Parties to provide input in respect of the manner of distributions following an occurrence of an Event of Default.

19. As LaSalle indicated in the March 10 Notice, on the March 10, 2008 Payment Date it escrowed all amounts that were payable in respect of interest on the Class A-2 Notes pursuant to Section 11.1(b) of the Indenture (the "Class A-2 Note Interest Amounts"). LaSalle has also escrowed Class A-2 Note Interest Amounts for the Payment Dates in April, May, June and July of 2008.

20. By email dated April 8, 2008, NIBC responded to LaSalle's March 10 Notice. NIBC wrote, "In our view, there is no doubt that the inclusion of a separate priority of payments section in the case of an Event of Default (Section 11.1(b)) can only lead to the conclusion that

such payment waterfall should be followed after an Event of Default. We see no reason for any party to introduce a separate payment priority in which items are prioritized in comparison to other items, only to skip such items until the items which are in the same payment priority listed as more junior are repaid in full. As a result, it is our view that upon an Event of Default, the Class A-2 Periodic interest should be paid before any payments can be made in accordance with items (vi) and further of Section 11.1(b)."

21. By email with a letter attached, dated March 28, 2006, Rabobank International, New York Branch responded to the March 10 Notice. Rabobank International, New York Branch stated the position that "Section 11.1(b) of the Indenture requires that following the occurrence of an Event of Default, payments in respect of interest be made on the Class A-2 Notes prior to making payments in respect of principal to the Class A-1 Notes and that Section 13.1(d) provides that the Subordinate Interests shall be subordinate and junior to the Class A-1 Notes only '<u>to the extent and in the manner set forth in this Indenture, including as set forth in Section 11.1(a) and hereinafter provided</u>'," and requested that "the Trustee distribute interest payable on the Class A-2 Notes as required by Section 11.1(b) of the Indenture . . . ." (emphasis in original).

22. Citigroup has taken the position that the occurrence of an Event of Default requires that the provisions of Section 13.1 of the Indenture apply to distributions pursuant to Section 11.1(b) of the Indenture, which would have the result that the Class A-1 Notes be paid in full prior to making any interest payments on the Class A-2 Notes. This position is contrary to the position taken by Rabobank International, New York Branch and NIBC with respect to the interpretation of the Indenture after an occurrence of an Event of Default.

23. Upon information and belief, one or more Doe Defendants has taken or will take the position that Citigroup's interpretation of Sections 11.1(b) and 13.1 of the Indenture is

- 6 -

neither reasonable nor correct and that, as a result, the occurrence of an Event of Default does not require that the Class A-1 Notes be paid in full prior to making interest payments on the Class A-2 Notes.

24. A dispute thus exists among the various parties with an interest in the Collateral as to the proper treatment of the proceeds thereof on prior and future Payment Dates. In particular, Citigroup has taken the position that LaSalle is required to apply the provisions Section 13.1 of the Indenture to distributions pursuant to Section 11.1(b) of the Indenture and as a result can make payments of interest to holders of Class A-2 Notes on Payment Dates only after payment in full of the principal amount of the Class A-1 Notes. Rabobank International, New York Branch and NIBC and, upon information and belief, other holders of Class A-2 Notes, dispute Citigroup's interpretation of the Indenture, insisting that LaSalle is not required to make all payments in respect of principal on the Class A-1 Notes prior to making payments of interest to the Class A-2 Notes.

25. Sections 11.1(b) and 13.1, and other relevant provisions of the Indenture, are ambiguous with respect to the proper distribution of the Class A-2 Note Interest Amounts following the occurrence of an Event of Default. LaSalle is unable to determine, without exposing itself to risk of liability, in what manner distribution of such proceeds should occur in such circumstances.

26. The dispute over entitlement to the Class A-2 Note Interest Amounts will likely recur on future Payment Dates.

27. The total amount of escrowed funds being held by LaSalle, representing the amount of proceeds in dispute, is currently $560,670.38. A bond securing this amount is being filed with the Court by LaSalle.

LEGAL02/30871782v5

28. LaSalle is ready and willing to distribute the disputed funds in such manner as the Court shall direct.

29. The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

## PLEA FOR RELIEF

**WHEREFORE,** LaSalle asks this Court:

(i) To order Interpleader Defendants to interplead and to settle all claims to proceeds of the Collateral between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such proceeds;

(ii) To restrain Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the proceeds, from commencing or prosecuting any separate proceeding against LaSalle concerning or relating to the issues in this action;

(iii) To award LaSalle its costs and disbursements, including legal fees and expenses, with respect to this action and the distribution of proceeds in dispute.

(iv) To award LaSalle such other and further relief as the Court may deem just, proper and equitable.

Dated: New York, New York
July 11, 2008

ALSTON & BIRD LLP

By: _____
Michael E. Johnson (MJ 0299)
Judith A. Amorosa (JA 4027)
90 Park Avenue
New York, New York
(212) 210-9400

*Attorneys for Interpleader Plaintiff
LaSalle Bank National Association,
as Trustee*